(170 App. Div. 408)

## McCALMONT v. FARSON et al.

(Supreme Court, Appellate Division, First Department.   December 10, 1915.)

SALES ⊗⇒85—PROVISIONS FOR REPURCHASE—CONSTRUCTION.

Defendants, on making a sale of irrigation bonds, wrote plaintiff's executor a letter, praising the bonds and offering at any time to repurchase them at par.   Subsequently plaintiff's executor made other purchases, but there was no new agreement by defendant to repurchase such bonds at par.   *Held*, that the agreement to repurchase the bonds applied only to the bonds first sold, the letter referring to the particular bonds, and so defendants were not obligated to repurchase bonds subsequently acquired.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 236–238;   Dec. Dig. ⊗⇒85.]

Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by Eleuthera D. McCalmont, as executrix of the last will and testament of James Donald McCalmont, deceased, against William Farson and others.   From a judgment entered on a verdict rendered for plaintiff by direction of the court, and from an order denying new trial, defendants appeal.   Modified and affirmed.

See, also, 166 App. Div. 921, 151 N. Y. Supp. 1127.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Lewis L. Delafield, of New York City (Alfred Gregory, of New York City, on the brief), for appellants.

Henry H. Abbott, of New York City (Dana T. Ackerly and Edward A. Craighill, Jr., both of New York City, on the brief), for respondent.

LAUGHLIN, J.   At the close of the evidence counsel for defendants moved for the dismissal of the complaint.   The motion was denied, and he excepted.   Both parties then moved for the direction of a verdict, and by consent the jury were discharged and the case was submitted to the court for the direction of a verdict without the presence of the jury.   On the subsequent direction of the verdict, appellants duly excepted, and also excepted to the denial of their motion.

On the 14th day of February, 1910, James Donald McCalmont, plaintiff's testator, either individually or as executor of Samuel P. McCalmont, purchased of the defendants at par and accrued interest Greeley-Poudre Irrigation District bonds of the par value of $5,000, and McCalmont exchanged therefor Chicago Sanitary District bonds of the par value of $5,000, and on the 15th day of April, 1910, purchased of them like bonds of the par value of $15,000 at par and accrued interest.   This action was brought to recover back the agreed purchase price, and it is based on a promise alleged to have been made in *writing* by defendants to repurchase them at the same price at any time.   In order to avoid any question with respect to whether the purchases were made by McCalmont individually or as executor, the plaintiff procured an assignment from the surviving executors of Samuel P. Mc-

Calmont and pleaded in separate counts the purchase by him individually and as executor. On a demurrer to each count of the complaint for insufficiency the complaint was sustained. 166 App. Div. 921, 151 N. Y. Supp. 1127. See also, Sims v. Farson, 157 App. Div. 38, 141 N. Y. Supp. 673; Id., 162 App. Div. 426, 147 N. Y. Supp. 769.

The defendants were engaged in business in New York as bankers and brokers under the firm name of Farson, Son & Co. The negotiations which, it is now conceded, resulted in the first purchase of bonds in exchange for Sanitary District bonds of the par value of $5,000, opened on the 27th day of January, 1910, by an effort by one Warner, who was a salesman in the employ of defendants, to interest McCalmont in the purchase of some of these bonds, and McCalmont being desirous of selling Chicago Sewer District bonds of the par value of $6,000, which he owned, defendants attempted to find a market therefor. That interview took place at Franklin, Pa., where McCalmont resided. Two days later defendants wrote McCalmont, referring to the "visit" of their salesman, and offering to take his said bonds "at the market" in exchange for an *equal* amount of "County of Weld, Colo., Municipal Water 6's," known as Greeley-Poudre Irrigation District bonds, at par and accrued interest. A copy of the letter was also sent to Warner, who was called as a witness for defendants and testified that he again called on McCalmont. On cross-examination he denied that McCalmont refused to purchase the bonds unless defendants would agree to repurchase them; but he admitted that after that interview with McCalmont he communicated with defendant Farson by telephone, or had an interview with him in New York. He was then asked whether Farson said "he would send a letter in which he would agree to buy back these bonds that he might purchase," and he answered, "Yes; there would be a letter sent;' yes." He was then asked, "To what effect?" and he answered, "Well, to the effect of the marketability of the bonds." On the 7th day of February, 1910, defendants wrote McCalmont as follows:

"Referring to our previous correspondence, and the visit of our Mr. Warner, we call your attention to the following information in regard to the County of Weld, Colorado, Municipal Water 6's. (Greeley-Poudre Irrigation District): * * * These bonds are not affected in any way by panics, money fluctuations, as are bonds listed on the Stock Exchange. We always make a market for our offerings, and will be ready at all times to pay you the price at which you purchased them, and will, without a doubt, be able to give you a premium. * * * In our estimation you could not possibly obtain a more conservative and attractive investment, and we should be pleased to receive your order."

Warner again called on McCalmont, who in the meantime had received said letter, and evidently they came to an agreement with respect to an exchange of securities, for on the 14th of February, 1910, the defendants wrote McCalmont confirming a sale to him through Warner of the Greeley-Poudre Irrigation District bonds at par and accrued interest, and the purchase from him of Chicago Sanitary District bonds of the par value of $5,000 at 102 and accrued interest, and inclosing a check for the difference between the price of the bonds sold by them and those they purchased.

It is now conceded that the plaintiff was entitled to recover on account of the first sale, and the sole contention in behalf of appellant is that the agreement to repurchase was limited to that sale, and formed no part of the consideration for the second purchase of like bonds of the par value of $15,000, which was made on the 19th of April, or more than two months thereafter. There is no evidence that any agreement other than as already stated was made by defendants with respect to repurchasing bonds, or that the letter of February 7th was referred to during the subsequent negotiations leading up to the second sale, which was made in exchange for Kokomo, Ind., Water Company bonds. Moreover, although Warner testified that he endeavored to sell McCalmont more of the same issue of bonds at the time of the first sale, he admitted that the first sale closed all pending negotiations with McCalmont, who then said "that he was not in the market at that time" for any more of the bonds. Warner further testified that he called on McCalmont every time he went to Franklin, which was frequently, and at also most every interview urged him to buy more of these bonds, and that later on and in March McCalmont submitted a list of securities which he was desirous of selling, including Kokomo, Ind., Water bonds, for which defendants found a market, and the second exchange of securities was negotiated and consummated.

It appears that defendants had the sale of all the Greeley-Poudre Irrigation bonds; but I fail to see how that strengthens the plaintiff's case. Their letter of February 7, 1910, was written with respect to a particular sale of these bonds which they were then negotiating, and I think that it should not be construed as an agreement on their part to repurchase every bond they might thereafter sell. For aught that appears, this may have been the first sale of the bonds. It is evident that it might have been of material advantage to them, in disposing of other bonds, to state that they had already made some sales at par. The letter expressly refers to the negotiations then pending, and it should be, I think, limited to the sale in which those negotiations culminated.

The judgment should therefore be modified, by reducing the recovery to the amount of the liability of defendants on account of the first purchase of bonds, which is conceded by appellants to be $6,019.09, and, as so modified, affirmed, with costs to appellants; and if there be any question with respect to the amount of the reduction required by these views the parties may be heard with respect thereto on the settlement of the order. Settle order on notice.

INGRAHAM, P. J., and McLAUGHLIN and SCOTT, JJ., concur. CLARKE, J., dissents, and votes for affirmance.